### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **TRUEMAIL TECHNOLOGIES, LLC,** <br><br> **Plaintiff,** <br><br> v. <br><br> **iContact, LLC**, <br><br> **Defendant.** | Civil Action No. <br><br><br> Jury Trial Demanded |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff TrueMail Technologies, LLC ("Plaintiff" or "TrueMail"), by and through its attorneys, for its Complaint against iContact, LLC (herein "Defendant" or "iContact") hereby alleges as follows:

### I.    NATURE OF THE ACTION

1. This is a patent infringement action to end Defendant's direct, joint, and/or induced infringement of Plaintiff TrueMail's patented inventions, including, but not limited to, Defendant's unauthorized and infringing use of Plaintiff's inventions.

2. TrueMail holds all substantial rights and interest in and to United States Patent No. 9,363,084 (the "'084 Patent"), issued on June 7, 2016, entitled "Methods and Apparatus for Controlling the Transmission and Receipt of Email Message." A true and correct copy is appended hereto as **Attachment A**.

3. TrueMail holds all substantial rights and interest in and to United States Patent No. 7,380,126 (the "'126 Patent"), issued on May 27, 2008, entitled "Methods and Apparatus for Controlling the Transmission and Receipt of Email Messages." A true and correct copy is appended hereto as **Attachment B**.

4. TrueMail holds all substantial rights and interest in and to United States Patent No. 8,560,655 (the "'655 Patent"), issued on October 15, 2013, entitled "Methods and Apparatus for Controlling the Transmission and Receipt of Email Messages." A true and correct copy is appended hereto as **Attachment C**. Together the '084, '126 and '655 Patents are the "Asserted Patents".

5. Plaintiff TrueMail seeks to prevent Defendant from continuing infringement of Plaintiff's patent rights. Plaintiff TrueMail further seeks monetary damages and prejudgment interest for Defendant's past infringement of the Asserted Patents.

## II. THE PARTIES

6. Plaintiff TrueMail is a limited liability company organized and existing under the laws of the State of Texas, with its corporate office located at 903 E. 18th St., Suite 222, Plano, TX 75074.

7. Upon information and belief, Defendant iContact, LLC is organized under the laws of the State of Delaware with its principal place of business located at 2121 RDU Center Drive, Fourth Floor, Morrisville, North Carolina 27560. Pursuant to the State of Delaware's Division of Corporations, iContact's registered agent for service of process is Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

## III. JURISDICTION AND VENUE

8. This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

9. This Court has personal jurisdiction over Defendant because they have committed acts giving rise to this action within Delaware and within this judicial district. The Court's exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial

justice because Defendant has established minimum contacts with the forum with respect to both general and specific jurisdiction. Upon information and belief, Defendant transacts substantial business in the State of Delaware and this Judicial District. Further, Defendant has committed acts of infringement in this District, by among other things, infringing and/or inducing the infringement of TrueMail's Asserted Patents knowing that its directly infringing services are used and/or sold in the State of Delaware and this Judicial District as well as providing service and support to Defendant's customers in this Judicial District.

10. Venue in the District of Delaware is proper pursuant to 28 U.S.C. §§ 1391(c)(2), 1400(b) as Defendant iContact, LLC is organized under the laws of the State of Delaware and therefore resides in this judicial district.

### IV.   BACKGROUND

#### TrueMail

11. James Logan "Logan" and Charlie Call "Call" are the named inventors of the '084 Patent, the '126 Patent, and the '655 Patent.

12. Logan is a prolific inventor. Logan is listed as an inventor or co-inventor on no fewer than 32 United States patents. Call has worked as a patent attorney for over fifty years. As a patent attorney, Call has extensive experience with computers and computer-related patents. Call has drafted over 500 United States patents. Call is also listed as an inventor or co-inventor on no fewer than 12 United States patents.

13. The Asserted Patents have been cited approximately 144 times by prominent technology companies in the email delivery space. *See, e.g.,* https://patents.google.com/patent/US7380126B2/en#citedBy.

## The Asserted Patents

14. On May 31, 2002, United States Patent Application No. 10/160,708 (the "'708 application") was filed. The '708 application claimed, among other things, a method and apparatus for controlling the transmission and receipt of email messages.

15. Logan and Call were listed as co-inventors of the '708 application.

16. On May 27, 2008, the United States Patent and Trademark Office ("PTO") issued United States Patent No. 7,380,126, entitled "Methods and Apparatus for Controlling the Transmission and Receipt of Email Messages."

17. On May 23, 2008, Call filed United States Patent Application No. 12/154,491. (the "'491 application"). The '491 application was a divisional application of the previously-filed '708 application. The '491 application claimed, among other inventions, a method and apparatus for controlling the transmission and receipt of email messages.

18. On October 15, 2013, the PTO issued United States Patent No. 8,560,655 entitled "Methods and Apparatus for Controlling the Transmission and Receipt of Email Messages."

19. On October 14, 2013, Call filed United States Patent Application No. 14/053,551. (the "'551 application"). The '551 application was a divisional application of the previously-filed '708 application, and the previously-filed '491 application. The '551 application claimed, among other inventions, a method and apparatus for controlling the transmission and receipt of email messages.

20. On June 7, 2016, the PTO issued United States Patent No. 9,363,084 entitled "Methods and Apparatus for Controlling the Transmission and Receipt of Email Messages."

21. The Asserted Patents share a common specification.

22. The '126 Patent claims, among other inventions, a method for identifying unwanted email messages, using an encrypted digital signature to authenticate the content and manifest a

promise by the sender that the email message conforms to one or more rules of good conduct.  *See* '126 Patent, 7:45-67.

23. The '126 Patent's claims employ more than well-understood, routine, and conventional computer functions including, but not limited to, improvements in computer functionality related to email message handling.

24. The '655 Patent claims, among other inventions, a method for identifying unwanted email messages, by using an encrypted digital signature to authenticate the content and manifest a promise by the sender that the email message conforms to one or more rules of good conduct.  *See* '655 Patent, 7:11-67.

25. The '655 Patent's claims employ more than well-understood, routine, and conventional computer functions including, but not limited to, improvements in computer functionality related to email message handling.

26. The '084 Patent claims, among other inventions, a method for distinguishing email messages by using an encrypted digital signature to authenticate the content and manifest a promise by the sender that the email message conforms to one or more rules of good conduct.  *See* '084 Patent, 7:17-8:9.

27. The '084 Patent's claims employ more than well-understood, routine, and conventional computer functions including, but not limited to, improvements in computer functionality related to email message handling.

28. TrueMail holds all substantial rights in and to the Asserted Patents, including all rights to recover for all past and future infringements thereof.

### iContact's Acts of Infringement

29. Upon information and belief, iContact provides, uses, sells, and offers to sell access to and use of an online email marketing platform that when used infringes the Asserted Patents.

Defendant's infringing online email marketing platforms include, but are not limited to, iContact, iContact Pro, iContact for Salesforce, and iContact's Application Programming Interface (API) (collectively "Platforms").  Defendant's Platforms are made available through iContact's website, icontact.com.

30. Defendant's Platforms infringe the Asserted Patents at least by providing an online email marketing service at icontact.com ("iContact's Service"), which handles emails on behalf of its customers/users that identifies and/or distinguishes unwanted email messages.

> The inbox deliverability experts at iContact employ many best practices to help our clients avoid the dreaded spam folder.  After all, that's where the phishing scammers belong! While most senders are aware of the rules when it comes to email sending, they may not be aware of the intricate hoops that an email jumps through on its way to the inbox.

iContact Blog Post: Insights into Inbox Deliverability (https://www.icontact.com/blog/insights-into-inbox-deliverability) (accessed April 27, 2018)

31. iContact's Services attach metadata to its customer's email messages that contain a unique identification of the sender of these messages.  In addition, iContact's Services attach a DKIM signature to these email messages using cryptographic techniques that allow a recipient to validate the identity of the sender.

```
DKIM-Signature: v=1; a=rsa-sha256; c=relaxed/relaxed; s=default; d=icontactmail6.com;
  h=Mime-Version:From:To:Date:Reply-To:Subject:List-Unsubscribe:Content-Type:
  Message-ID;
  bh=5iSxXVr9Y7wOc401Vv1KiykebWrf4tvtKk3sQvvrMCU=;
  b=F7U/4ymbypqSJ8iuHs+U+1bl5cbJ+FMBRCr/NLffLOYLM3XiuQKfqzfkMmqqadLWU5GHyOgbRHXc
    utmfBWrzYk/rhoHfQOWqJgG9gCV2bq5V8ykiCoc3nPdxywkTZOPlb7jyVZEeGUgPqAPeMEvY6QAF
    C2+PrRczj4JqyiuS8fU=
Mime-Version: 1.0
From: "Brad Liddle" <bdliddle@gmail.com>
To: <lonestartechindustries@gmail.com>
Date: Tue, 24 Apr 2018 12:53:59 -0400
Reply-To: bdliddle@gmail.com
Subject: TEST MESSAGE 1
Errors-To: bounces+1748574.2474347.5833@icpbounce.com
```

**Attachment D**, Sample iContact Message Header, at 2.

32.     iContact's Services include attaching metadata that at least manifests a legally binding promise by the sender that the transmitted message conforms to rules of good conduct. Prior to adding a recipient to a message distribution list, iContact's Services require customers and users to confirm that they have prior authorization from the recipient to receive email messages.

iContact has a no tolerance spam policy. The strict measures we take to enforce our policy include, but are not limited to:

- We review and monitor large list imports. This includes a review of the list source, list age, collection methods, and confirmation practices.
- We utilize an MD5 hash record to screen for characteristics of commonly harvested lists
- A member of our staff reviews each message sent to more than 5000 Recipients and either will approve or reject it. This threshold is 500 Recipients for clients that have been with us for less than two months.
- We utilize a content-checking utility to screen and flag any message that contains words common to unsolicited emails.
- ==We require each customer to initial the following statement prior to each send: "I certify with my initials that all recipients granted their permission to be sent this message."==
- A record is saved of every email that is sent through the system.
- Any customer found to be using iContact for spam will be immediately cut-off from use of the product.
- We maintain the IP address and date subscribed for every new Recipient.
- ==Every email, whether text or HTML, contains a mandatory unsubscribe/opt-out link at the bottom of the message. This unsubscribe link cannot be removed.==

iContact Anti-Spam Policy (https://www.icontact.com/legal/anti-spam-policy)



**Attachment E**, Screenshot of iContact's Send Confirmation Request

> **End User Services Agreement**
>
> **Effective date: August 1, 2015**
>
> PLEASE REVIEW THIS END USER SERVICES AGREEMENT (THIS "**AGREEMENT**") CAREFULLY, AS IT CONSTITUTES A LEGAL AGREEMENT BETWEEN YOU ("**YOU**" OR "**CUSTOMER**") AND iCONTACT, LLC ("**iCONTACT**" OR "**WE**") WITH RESPECT TO YOUR USE OF iCONTACT'S SOFTWARE, SERVICES AND APPLICATIONS (THE "**SERVICE**"). BY USING THE SERVICES, YOU AGREE TO BE BOUND BY EACH OF THE TERMS AND CONDITIONS SET FORTH HEREIN. IF YOU DO NOT AGREE WITH THESE TERMS AND CONDITIONS, YOU WILL NOT BE ALLOWED TO USE THE SERVICE.

iContact End User Agreement (https://www.icontact.com/legal/terms-conditions#endUser)

33.     This binding promise is included in the metadata of an iContact message, as shown below. The presence of the X-ICPINFO field indicates that a given email message is an iContact message and thus the sender is subject to iContact's policies.

```
Feedback-ID: 1748574_3434_5833:1748574_3434:1748574:icontact
X-ICPINFO:
X-Return-Path-Hint: bounces+1748574.2474347.5833@icpbounce.com
Content-Type: multipart/alternative; boundary="cdf82e78-582d-4a55-9037-dacf81ae37d3"
Message-ID: <0.0.5.60.1D3DBECD757621C.0@drone067.ral.icpbounce.com>
```

**Attachment D**, Sample iContact Message Header, at 3.

34.     Additionally, the content of iContact Messages must include information indicating that a message has been transmitted by iContact including a link to iContact's policies.

> 14. **No Tampering**. Each email message that is sent using the Service must contain an "unsubscribe" link that allows Recipients to remove themselves from Customer's mailing list and a link to iContact's Policies. Customer agrees that it will not remove, disable, modify or attempt to remove, disable or modify either link. Further, each such email message may contain an automatic identifying footer such as "Powered by iContact." Except as otherwise expressly permitted in writing by iContact, Customer agrees that it will not remove, disable or modify or attempt to remove, disable or modify such footer.

iContact End User Agreement (https://www.icontact.com/legal/terms-conditions#endUser)

35.     As part of the provisioning of iContact's Services, iContact takes responsibility for transmitting messages for its customers and users in a way that can be validated by a recipient

using DomainKeys Identified Mail (DKIM).  iContact's Services utilize a public/private pair of encryption keys and digitally signs the message with a DKIM signature.

```
DKIM-Signature: v=1; a=rsa-sha256; c=relaxed/relaxed; s=default; d=icontactmail6.com;
    h=Mime-Version:From:To:Date:Reply-To:Subject:List-Unsubscribe:Content-Type:
    Message-ID;
    bh=5iSxXVr9Y7wOc401Vv1KiykebWrf4tvtKk3sQvvrMCU=;
    b=F7U/4ymbypqSJ8iuHs+U+1bl5cbJ+FMBRCr/NLffLOYLM3XiuQKfqzfkMmqqadLWU5GHyOgbRHXc
    utmfBWrzYk/rhoHfQOWqJgG9gCV2bq5V8ykiCoc3nPdxywkTZOPlb7jyVZEeGUgPqAPeMEvY6QAF
    C2+PrRczj4JqyiuS8fU=
```

**Attachment D**, Sample iContact Message Header, at 2.

      36.     The public key used by iContact in its DKIM signatures is published in a DNS record to enable recipients of iContact Messages to decrypt its DKIM signatures to verify a message's content and the identity of the sender.  The location of the public key in the attached Sample iContact Message Header is identified in the portion of the DKIM signature that reads "s=default; d=icontactmail6.com".  *See* Attachment D at 2.

```
Server:  dns-cac-lb-01.rr.com
Address:  209.18.47.61

default._domainkey.icontactmail6.com    text =

    "k=rsa;
p=MIGfMA0GCSqGSIb3DQEBAQUAA4GNADCBiQKBgQD0jfAbqg9512kco+zrnb+w5BKyKr23qsVFzpmPYPtabe
leiUqACnlsFPykEMkGzLksyuF16aIkn3w9ixhLO3+VHVQ7iXn/ktWqAvwWJFIcG37sl/63ICvr5KsUwETOWq
nf8L8sw0cTzTcSxDPp++DfAP0qbV2fXwim4FEgGV0fqQIDAQAB;"

icontactmail6.com        nameserver = ns1.icontact.com
icontactmail6.com        nameserver = ns5.icontact.com
```

**Attachment F**, DNS entry for "default._domainkey.icontactmail6.com".

      37.     On information and belief, the corresponding private key is kept in secret by iContact and used for the purpose of creating DKIM signatures that can be decrypted using the public key published by iContact in a DNS record.

38. TrueMail has been and will suffer damages as a result of Defendant's infringing acts unless and until it is enjoined.

### Direct and Joint Infringement

39. TrueMail restates and realleges each of the allegations set forth above and incorporates them herein.

40. Upon information and belief, iContact and its affiliates sell and offer to sell access to and/or use of iContact's online email marketing platforms in this jurisdiction and elsewhere including, but not limited to, iContact, iContact Pro, iContact for Salesforce, and iContact's Application Programming Interface (API) (collectively "Platforms"). The provision of and/or use of iContact's Platforms in the State of Delaware within the judicial district, and elsewhere in the United States, is without Plaintiff's authorization and directly infringes the Asserted Patents.

41. Upon information and belief, iContact employees use iContact's Platforms, including by using iContact's Services to send email messages in a manner that directly infringes the Asserted Patents, as described in the paragraphs above.

42. Upon information and belief, iContact contracts with customers and/or end users to provide a service in this jurisdiction and elsewhere that infringes the Asserted Patents. Upon information and belief, iContact enters into agreements with customers, end users and/or others within this jurisdiction and elsewhere concerning the operation of and use of iContact's Platforms in a manner that infringes the Asserted Patents. All elements of at least claim 1 of the '126 Patent, claim 1 of the '655 Patent, and claim 1 of the '084 Patent are practiced by iContact's Platforms. For example, iContact's Platform enables its customers to send emails to recipients that are modified by iContact to include a digital signature confirming the identity of the sender, in the form of a DKIM signature. The sender agrees to comply with multiple rules of good conduct as set forth by iContact, and in turn iContact transmits the sender's emails including a DKIM

signature and a reference to a corresponding public key that is stored in a DNS record. This allows the recipients to verify the identity of the sender. iContact's rules of conduct include a legally binding promise to send emails only to recipients who have granted permission to receive them.

43.     Through its software and servers, iContact issues computerized instructions to direct or control performance of the acts that constitute infringement of the Asserted Patents.

44.     To the extent that some elements of a claim are performed by parties other than iContact, iContact—through its software and services—participates in the infringement (as described above and herein) and receives a benefit upon performance of the steps of the patented methods. For example, iContact provides the software that establishes the manner and/or timing of the performance of the steps, including downloading other software, downloading content, establishing communication links, and/or other actions that a user may request or result from a user's actions. iContact receives a benefit from such actions by the customer as they result in iContact being compensated for the use of iContact's Services.

45.     All of the above acts constitute acts of direct infringement.

### Induced Infringement

46.     TrueMail restates and realleges each of the allegations set forth above and incorporates them herein.

47.     Upon information and belief, iContact has been and continues to induce infringement of the Asserted Patents in the State of Delaware within this judicial district, and elsewhere in the United States, by, among other things, instructing and encouraging its customers and their agents to perform infringing acts without Plaintiff's authority. This includes the processing and distribution of email messages by mail transfer agents and/or mail submission agents on behalf of senders and/or recipients. The customers of iContact use iContact's Services and Platforms to control the transmission and processing of email messages.

48. Upon information and belief, iContact actively induces its customers and/or users of iContact's Platforms to infringe the Asserted Patents by providing subscriptions to iContact's Platforms. Upon information and belief, iContact knowingly and specifically designed iContact's Platform such that its use infringes the Asserted Patents. iContact also provides support services for its Platforms, including providing instructions, guides, online materials, and technical support that cause its customers to infringe the patents. iContact's Platforms have no substantial non-infringing use. iContact has acted with specific intent to induce or cause infringement and to conduct acts of infringement as described herein within the jurisdiction and elsewhere.

49. Upon information and belief, iContact has had knowledge of the Asserted Patents at least as of the service of this complaint. Upon information and belief, iContact sells and offers to sell a service with the specific intent that its customers, third parties, and/or end users infringe the Asserted Patents. Upon information and belief, iContact provides and instructs third parties to use its Platforms in the manner claimed in the Asserted Patents.

50. To the extent that some elements of a claim are performed by parties other than iContact's customers, they are performed by iContact itself or at the direction and control of iContact's customers in a manner encouraged by iContact. iContact provides manuals and tutorials regarding the use of iContact's Services and Platforms that when used as instructed infringe the Asserted Patents. The customers of iContact receive a benefit from the performance of infringing acts in so far as they have purchased the assistance of iContact to perform the infringing activities.

51. Upon information and belief, customers, and users of iContact's Platforms reside within this District and conduct acts of direct infringement within this District.

### COUNT ONE – INFRINGEMENT OF THE '084 PATENT

52. TrueMail restates and realleges each of the allegations set forth above and incorporates them herein.

53. Defendant is liable for direct infringement of the '084 Patent, including, but not limited to, claims 1, 2, 6-11 under 35 U.S.C. § 271(a) by performing and offering to perform a service that includes activity claimed by the '084 Patent.

54. Defendant is liable for induced infringement of the '084 Patent under 35 U.S.C. § 271(b) by actively inducing its customers to use iContact's Platform in a manner claimed by the '084 Patent.

55. Defendant does not have a license or permission to use the claimed subject matter in the '084 Patent.

56. As a direct and proximate result of Defendant's direct and induced infringement of the '084 Patent, TrueMail has been injured and has been caused significant financial damage.

57. Defendant's aforementioned acts have caused damage to TrueMail and will continue to do so unless and until enjoined.

### COUNT TWO - INFRINGEMENT OF THE '126 PATENT

58. TrueMail restates and realleges each of the allegations set forth above and incorporates them herein.

59. Defendant is liable for direct infringement of the '126 Patent including, but not limited to, claims 1 and 3 under 35 U.S.C. § 271(a) by performing and offering to perform a service that includes activity claimed by the '126 Patent.

60. Defendant is liable for induced infringement of the '126 Patent under 35 U.S.C. § 271(b) by actively inducing its customers to use iContact's Platform in a manner claimed by the '126 Patent.

61. Defendant does not have a license or permission to use the claimed subject matter in the '126 Patent.

62. As a direct and proximate result of Defendant's direct and induced infringement of the '126 Patent, TrueMail has been injured and has been caused significant financial damage.

63. Defendant's aforementioned acts have caused damage to TrueMail and will continue to do so unless and until enjoined.

### COUNT THREE – INFRINGEMENT OF THE '655 PATENT

64. TrueMail restates and realleges each of the allegations set forth above and incorporates them herein.

65. Defendant is liable for direct infringement of all claims of the '655 Patent under 35 U.S.C. § 271(a) by performing and offering to perform a service that includes activity claimed by the '655 Patent.

66. Defendant is liable for induced infringement of the '655 Patent under 35 U.S.C. § 271(b) by actively inducing its customers to use iContact's Platform in a manner claimed by the '655 Patent.

67. Defendant does not have a license or permission to use the claimed subject matter in the '655 Patent.

68. As a direct and proximate result of Defendant's direct and induced infringement of the '655 Patent, TrueMail has been injured and has been caused significant financial damage.

69. Defendant's aforementioned acts have caused damage to TrueMail and will continue to do so unless and until enjoined.

### V.     JURY DEMAND

Plaintiff hereby demands a jury on all issues so triable.

### VI.     REQUEST FOR RELIEF

WHEREFORE, Plaintiff TrueMail respectfully requests that the Court:

A. Enter judgment that Defendant directly or induces others to infringe one or more claims of the Accused Patents literally and/or under the doctrine of equivalents;

B. Permanently enjoin Defendant, its agents, servants, and employees, and all those in privity with Defendant or in active concert and participation with Defendant, from engaging in acts of infringement of the Accused Patents;

C. Award Plaintiff past and future damages together with prejudgment and post-judgment interest to compensate for the infringement by Defendant of the Accused Patents in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

D. Award Plaintiff its costs, disbursements, attorneys' fees;

E. Award Plaintiff prejudgment and post-judgment interest to the maximum extent provided under the law; and

F. Award Plaintiff such further and additional relief as is deemed appropriate by this Court.

Dated: May 11, 2018

Of Counsel:

William M. Parrish
Victor G. Hardy
HARDY PARRISH YANG, LLP
Spicewood Business Center
4412 Spicewood Springs Rd. Suite 202
Austin, Texas 78759
Telephone: (512) 520-9407
Email: bparrish@HPYlegal.com
Email: vhardy@HPYlegal.com

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Fax: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

**ATTORNEYS FOR PLAINTIFF TRUEMAIL TECHNOLOGIES, LLC**